IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 3:15CV60–HEH ) |
| JACOB ASSAIL SCHUR, *et al.*, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION
(Cross Motions for Summary Judgment)

THIS MATTER is presently before the Court on the parties' cross motions for summary judgment (ECF Nos. 31, 33). On November 18, 2015, the Court held oral argument on the motions. For the reasons set forth below, the Court will deny Plaintiffs' Motion for Summary Judgement (ECF No. 31) and will grant Defendant Jacob Assail Schur's Motion for Summary Judgment (ECF No. 33).[1]

### I. BACKGROUND

This insurance coverage dispute stems from the formation of a limited liability company and subsequent litigation between Defendant Jacob Assail Schur ("Schur") and Defendant Mark D. Sprenkle ("Sprenkle"). On December 12, 2014, Sprenkle brought suit in Henrico County Circuit Court alleging defamation *per se* against Schur for comments he made to a third party. Schur timely notified his insurance carriers,

---

[1] On September 11, 2015, the Clerk entered default against Defendant Mark Sprenkle for failing to appear or otherwise defend in this action. (Entry of Default, ECF No. 30.)

Plaintiffs Travelers Casualty and Surety Company and the Automobile Insurance Company of Hartford (collectively "Travelers"), and sought coverage from the lawsuit. Invoking this Court's diversity jurisdiction, Travelers now seeks a declaration that it has no duty to defend Schur in the Henrico County suit.[2]

The Court has reviewed each party's statement of undisputed facts, including the extensive supporting documentation filed in support of the respective positions. The Court has concluded that the following narrative represents the facts for purposes of resolving the cross motions for summary judgment.

Travelers issued to Schur two separate insurance policies: a Homeowners Insurance Policy ("Primary Policy," ECF Nos. 32-3, 35-1) and a Personal Liability Umbrella Policy ("Umbrella Policy," ECF Nos. 32-4, 35-2). Each policy covers an "insured" for "occurrences" of "personal injury" with certain exclusions to coverage. The policies define "personal injury" as liability occurring from oral, written, or electronic publication of material that slanders or libels another person.

The Primary Policy contains an Enhanced Home Package addendum that excludes personal injury "[a]rising out of or in connection with a 'business' . . . engaged in by an 'insured.'" (Primary Policy, HO-84 VA (06-11), at 5.) The Primary Policy defines "business" as "[a] trade, profession, or occupation engaged in on a full-time, part-time or

---

[2] Travelers originally brought suit seeking a declaration that Travelers had neither a duty to defend nor a duty to indemnify Schur in the Henrico County suit. (Compl. ¶ 28, ECF No. 1.) The parties subsequently filed a Stipulation agreeing that submission of the question of indemnification would be premature and the scope of the insurance declaratory judgment before the Court should be limited to only the question of whether Travelers has any duty to defend. (Stipulation ¶¶ 1–2, ECF No. 28.) Accordingly, the Court only addresses Travelers' duty to defend.

2

occasional basis," as well as "[a]ny other activity engaged in for money or other compensation." (Primary Policy, HO-4 VA (07-08), at 1.) Similar to the Primary Policy, the Umbrella Policy excludes coverage for personal injury "arising out of 'business' pursuits or 'business' property of an 'insured.'" (Umbrella Policy, Plus P1 (03-99), at 3.) The Umbrella Policy states that "'[b]usiness' includes trade, profession or occupation." (*Id.* at 1.) The Primary Policy contains an additional exclusion for personal injury "[a]rising out of oral, written or electronic publication of material, if done by or at the direction of an 'insured' with knowledge of its falsity." (Primary Policy, HO-84 VA (06-11), at 5.)

In his Henrico County complaint, Sprenkle alleges that he serves as the principal of Sprenkle and Company, LLC, which is involved in the contracting and construction business. (*Sprenkle v. Schur* Compl. ("Underlying Compl.") ¶ 1, ECF Nos. 32-1, 35-3.) In addition to Sprenkle and Company, he has been involved with the music business in various ways over the past twenty years. (*Id.* ¶ 4.) In the summer and fall of 2008, Sprenkle and Schur formed a limited liability company named Black Water Management, LLC ("BWM") to promote and manage musical artists. (*Id.* ¶ 6.)

Since October 2010, however, Sprenkle and Schur have engaged in litigation in the City of Richmond Circuit Court involving BWM as detailed in case numbers CL10-4495 and CL12-2597. (*Id.* ¶ 7.) Although case number CL10-4495 was dismissed in part and nonsuited in part, case number CL12-2597 remained pending in the Richmond Circuit Court. (*Id.*) In Sprenkle's answer to Schur's request for production of documents in the case pending in Richmond Circuit Court, Sprenkle made various materials

3

available for inspection at Black Iris Music, LLC in Richmond, Virginia. (*Id.* ¶ 34.) Black Iris was a client of Sprenkle and Company, which oversaw the construction and renovation of Black Iris' offices. (*Id.* ¶ 35.)

On or about June 18, 2014, Schur contacted David Jackson, an owner of Black Iris, by telephone. (*Id.* ¶ 36.) Schur told Jackson that Sprenkle was both a "con artist" and "professional con artist." (*Id.*) Schur also stated that Sprenkle was "a liar and a fraud and a con artist" who "spen[t] his time scamming people, promising things that don't exist." (*Id.*) Schur told Jackson that Schur wanted to warn Jackson about Sprenkle and that Schur was "telling everyone he could" to avoid Sprenkle because he was a "con artist." (*Id.* ¶ 37.)

In Count III,[3] the Underlying Complaint alleges that Schur's statements that Sprenkle was a "con artist," "professional con artist," "a liar and a fraud," and spent his time "scamming people, promising things that don't exist" constituted defamation *per se*. (*Id.* ¶ 39.) Further, Schur's "defamatory statements were made maliciously, with a conscious disregard for the truth and the facts available to him at the time the statements were made, in order to damage Sprenkle's reputation, personally and professionally. Schur knew that his defamatory statements were false when he made them." (*Id.* ¶ 40.)

The parties agree that Schur constitutes an "insured" under the policies. (Travelers' Mem. Supp. Mot. Summ. J. ("Travelers' Mem.") 5, 8, ECF No. 32; Schur's Mem. Supp. Mot. Summ. J. ("Schur's Mem.") 3, 5, ECF No. 34.) Absent some

---

[3] The Underlying Complaint originally contained three counts of defamation *per se*; however, Counts I and II were dismissed with prejudice on April 28, 2015. Count III is the only remaining count. Additionally, Count III only incorporates by reference the first seven paragraphs of the Underlying Complaint. (Underlying Compl. ¶ 33.)

4

exception, any liability for Schur from the defamation suit would suffice as an "occurrence" of "personal injury" under the policies.[4] The parties, therefore, only debate the application of the business exclusions and the knowledge of falsity exclusion.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the construction of insurance contracts constitutes a legal question, resolution of the instant matter through summary judgment is "especially appropriate." *W. Am. Ins. Co. v. Johns Bros., Inc.*, 435 F. Supp. 2d 511, 513–14 (E.D. Va. 2006) (quoting *Clark v. Metro. Life Ins. Co.*, 369 F. Supp. 2d 770, 774 (E.D. Va. 2005)).

When deciding cross motions for summary judgment, a court must review the motions separately on their own merits "to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st. Cir 1997)). When considering the individual motions, a court must "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing that particular motion. *Id.* (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). Further, a court should "rule upon each party's motion separately and determine whether summary judgment is appropriate as to each

---

[4] Because the parties focus on the application of exclusions of an occurrence, a necessary prerequisite would be an actual occurrence under the policies.

5

under the [Federal Rule of Civil Procedure] 56 standard." *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 156 (4th Cir. 2010) (alteration in original) (quoting *Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999)).

## III. DISCUSSION

Because the Court exercises its diversity jurisdiction, the Court applies the choice of law rules of Virginia as the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1937); *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013) (citing *Seabulk Offshore, Ltd. v. Am. Home Assurance Co.*, 377 F.3d 408, 418–19 (4th Cir. 2004)). For choice of law purposes, "Virginia insurance law applies the law of the place where the insurance contract is written and delivered." *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (quoting *Buchanan v. Doe*, 246 Va. 67, 70–71 (1993)) (internal quotation marks omitted) (applying Virginia law). As the parties agree, Travelers issued and delivered the policies in Virginia, and Virginia law applies.

In Virginia, "it is a well-established principle . . . that only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend . . . the insured." *AES Corp. v. Steadfast Ins. Co.*, 283 Va. 609, 616–17 (2012). "This principle is commonly known as the 'eight corners rule' because the determination is made by comparing the 'four corners' of the underlying complaint with the 'four corners' of the policy, to determine

whether the allegations in the underlying complaint come within the coverage provided by the policy." *Id.*

Further, the duty to defend "is broader than [the] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." *Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co.*, 252 Va. 265, 265 (1996) (alteration in original) (quoting *Lerner v. Safeco*, 219 Va. 101, 104 (1978)). Known as the potentiality rule, "any possibility that a judgment against the insured will be covered under the insurance policy" triggers an insurance company's duty to defend an insured. *CACI Int'l, Inc.*, 566 F.3d at 155 (quoting *Bohreer v. Erie Ins. Grp.*, 475 F. Supp. 2d 578, 584 (E.D. Va. 2007)).

Additionally, courts construe exclusionary language against the insurer, and the burden rests on the insurer to prove any exclusion applies. *Am. Reliance Ins. Co. v. Mitchell*, 238 Va. 543, 547 (1989). To be effective, exclusionary language must "clearly and unambiguously bring the particular act of omission within its scope." *Floyd v. N. Neck Ins. Co.*, 245 Va. 153, 158 (1993). Doubtful or ambiguous language within a policy should be interpreted in favor of coverage, rather than withholding it. *Am. Reliance Ins. Co.*, 238 Va. at 547. "However, if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations, it has no duty even to defend." *Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185, 189 (1990) (quoting *Travelers Indem. Co. v. Obenshain*, 219 Va. 44, 46 (1978)) (internal quotation marks omitted).

## A. Business Exclusions

Travelers contends that the business exclusions contained within the policies preclude a duty to defend Schur from the Underlying Complaint. (Travelers' Mem. 11–13.)[5] Relying on BWM as the business, Travelers asserts Schur's alleged statements in the Underlying Complaint undoubtedly fall under the business exclusions because the Underlying Complaint claims the litigation involved BWM. Accordingly, Travelers believes that it has no duty to defend Schur.

On the other hand, Schur asserts that the mere formation of BWM as detailed in the Underlying Complaint fails to meet the definition of business under the policies, and the Underlying Complaint fails to show the litigation involving BWM arose from BWM's operation as a business. (Schur Mem. 18–23.) Because the Underlying Complaint fails on both points, the business exclusions cannot apply.

The Primary Policy excludes personal injury "[a]rising out of or in connection with a 'business' . . . engaged in by an 'insured.'" (Primary Policy, HO-84 VA (06-11), at 5.) Similar to the Primary Policy, the Umbrella Policy excludes coverage for personal injury "arising out of 'business' pursuits or 'business' property of an 'insured.'" (Umbrella Policy, Plus P1 (03-99), at 3.)

The Primary Policy defines business as a "[a] trade, profession, or occupation engaged in on a full-time, part-time or occasional basis," as well as "[a]ny other activity engaged in for money or other compensation." (Primary Policy, HO-4 VA (07-08), at 1.)

---

[5] The policies each contain business exclusions with differing language of similar import. Given the striking similarity in definitions, however, for purposes of resolving Travelers' duty to defend, the analysis applies equally to each, and the Court addresses them jointly.

8

The Umbrella Policy defines business as including "trade, profession or occupation." (Umbrella Policy, Plus P1 (03-99), at 1.) Virginia common law similarly looks to continuity and profit motive in determining whether an endeavor constitutes a business pursuit. *See Va. Mut. Ins. Co. v. Hagy*, 232 Va. 472, 475–76 (1987).

The Underlying Complaint alleges that in 2008, Schur and Sprenkle "formed a Virginia limited liability company named Blackwater Management, LLC . . . to manage and promote musical artists." (Underlying Compl. ¶ 6.) Since 2010, the two "have been involved in contentious litigation in the City of Richmond Circuit Court involving Blackwater Management as detailed in Case Numbers CL10-4495 and CL12-2597." (*Id.* ¶ 7.) The Underlying Complaint then asserts that, related to discovery in case number CL 12-2597, Schur contacted Jackson and allegedly made the defamatory statements. (*Id.* ¶¶ 34–38.)[6]

The only references to BWM as an entity contained within the Underlying Complaint indicate that Sprenkle and Schur formed the limited liability company and that

---

[6] The Underlying Complaint does not particularize the allegations in case number CL12-2597, and, therefore, those allegations are not before the Court for resolution of the instant motions. In an attempt to bolster its argument, however, Travelers attached the complaints from case numbers CL10-4495 and CL 12-2597 to its summary judgment pleadings. In briefing on a separate Motion to Strike (ECF No. 43), Travelers acknowledged that Virginia courts "do not appear to have had the opportunity to address" whether in applying an eight corner analysis a court may look to attachments to any underlying complaint or to other documents referenced therein. (Travelers' Opp'n Schur's Mot. Strike 5, ECF No. 45.) As the Virginia Supreme Court has stated, a court considers "*only* the allegations in the complaint and the provisions of the insurance policy . . . in deciding whether there is a duty on the part of the insurer to defend." *AES Corp.*, 283 Va. at 616–17 (emphasis added). Travelers provided no authority persuading this Court to depart from Virginia's long-standing rule. Accordingly, as other courts have, this Court declines to look beyond the allegations of the Underlying Complaint and provisions of the insurance policies. *See, e.g., Nautilus Ins. Co. v. Strongwell Corp.*, 968 F. Supp. 2d 807, 813–815 (W.D. Va. 2013).

9

the two engaged in contentious litigation "involving" BWM. The Underlying Complaint lacks any basis showing that BWM even operated or existed as a business. The Underlying Complaint alleges nothing linking Schur to BWM as his trade, profession, or occupation. Nor does the Underlying Complaint speak to anything about the continuity or profit motive of BWM. Even if BWM were operating as a business, other than the litigation "involving" BWM, the Underlying Complaint alleges nothing showing that the litigation arose from or in connection with BWM as a business.

Travelers indicated at oral argument that the Court should simply make the extrapolative inference that Sprenkle and Schur engaged in litigation that arose from BWM operating as a business. As Schur rejoined, the Court could just as easily draw the reasonable inference that the litigation was the result of BWM foundering at its inception. The Underlying Complaint's silence on the specifics of BWM and the litigation allows for the existence of equally plausible alternative reasons for the litigation "involving" BWM—not just Travelers' proffered rationale. *See Fuisz v. Selective Ins. Co. of Am.*, 61 F.3d 238, 246 (4th Cir. 1995) (noting that business exclusion not clearly and unambiguously applicable to statements made by insured where "claims le[ft] open the significant possibility that [insured] made the statements for purely personal, non-monetary reasons").

The lacuna in the controlling documents before this Court is any critical linkage between the agreement to form a business association, the present litigation between Sprenkle and Schur, and the comments made to Jackson. A clear connection requires firmer footing. Travelers cannot show that the business exclusion clearly and

10

unambiguously applies to the allegations in the Underlying Complaint. Accordingly, the business exclusion does not preclude Travelers' duty to defend. *See Floyd*, 245 Va. at 158; *Brenner*, 240 Va. at 189.

### B. Knowledge of Falsity Exclusion

Travelers avers that a second, independent exclusion applies barring coverage in this case, namely the Primary Policy's knowledge of falsity exclusion. (Travelers' Mem. 13–14.) According to Travelers, this exclusion applies because in Count III, the Underlying Complaint alleges in part that Schur "knew that his defamatory statements were false when he made them." (Underlying Compl. ¶ 40.) Travelers believes that this phrase alone clearly relieves its obligation to defend.

On the other hand, Schur maintains that the potentiality rule applies to the allegations related to the knowledge of falsity exclusion. (Schur Mem. 14–18.) According to Schur, although the Underlying Complaint pleads Schur "knew his defamatory statements were false," immediately preceding that assertion, the Underlying Complaint contends "Schur's defamatory statements were made maliciously, with conscious disregard for the truth and the facts available to him." (Underlying Compl. ¶ 40.) Schur avers this additional allegation of "conscious disregard" amounts to a claim of defamation based on less than actual knowledge, thereby pleading an alternative theory of liability covered under the Primary Policy. (Schur Mem. 16.)

The Primary Policy excludes coverage for personal injury "[a]rising out of oral, written or electronic publication of material, if done by or at the direction of an 'insured' with knowledge of its falsity." (Primary Policy, HO-84 VA (06-11), at 5.) As pleaded,

11

the Underlying Complaint premises liability on alternative fronts: first, that Schur made the defamatory statements with "conscious disregard for the truth," and second, that Schur "knew that his defamatory statements were false." (Underlying Compl. ¶ 40.) Here, even if Schur escapes liability for defaming Sprenkle with actual knowledge, he potentially still faces liability for defaming Sprenkle for conscious disregard of the truth—a standard more akin to recklessness or negligence.

As Travelers acknowledged at oral argument, under Virginia law, knowing defamation subsumes negligent defamation. A jury in the Henrico County proceeding potentially could be instructed on Schur's knowing defamation or his reckless or negligent defamation, subjecting Schur to alternative theories of liability. *See Fuisz*, 61 F.3d at 244 ("If the evidence at trial fails to establish that Fuisz intentionally harmed Terex, the complaint permits Terex nonetheless to prevail on its claims by proving Fuisz . . . acted with reckless disregard for the falsity of his statements.").[7] Accordingly, because Schur potentially faces liability on alternative theories of defamation—at least one of which would fall within the risk covered by the policy—the knowledge of falsity exclusion does not clearly and unambiguously apply in this case. *See CACI Int'l, Inc.*, 566 F.3d at 155; *Va. Elec. & Power Co.*, 252 Va. at 265.[8]

---

[7] The *Fuisz* court also discussed "the possibility that the complaint could be read to state a claim of negligent defamation despite the fact that Terex does not specifically allege that Fuisz acted negligently." 61 F.3d at 244 n.3. The court went on to state that on several occasions, the Supreme Court of Virginia had "held that negligent defamation [was] subsumed in proof of intentional discrimination." *Id.*

[8] The Umbrella Policy additionally excludes coverage for "'personal injury' for which you or your 'primary insurance' provider, or both, have been released from legal liability in full or in part." (Umbrella Policy, Plus P1 (03-99), at 6.) As argued by Travelers and conceded by Schur at oral argument, any finding that Travelers had no duty to defend based upon the Primary

## IV. CONCLUSION

Although Travelers asserts that two specific exclusions preclude any duty to defend, constrained by Virginia's eight corners rule, Travelers cannot show that either exclusion clearly and unambiguously applies to the allegations in the Underlying Complaint. Travelers, therefore, has a duty to defend Schur in the pending Henrico County suit. Accordingly, the Court will deny Plaintiffs' Motion for Summary Judgment (ECF No. 31) and will grant Defendant Jacob Schur's Motion for Summary Judgment (ECF No. 33).

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Nov. 24, 2015
Richmond, Virginia

---

Policy's knowledge of falsity exclusion would have trigged the Umbrella Policy's release from legal liability exclusion. Because the Court has found to the contrary, this additional exclusion in the Umbrella Policy does not apply.